UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ADELL COURTS,

        Plaintiff,                                         Hon. Janet T. Neff

v.                                                          Case No. 1:12 CV 1352

WILLIE SMITH, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendant McKenna's Motion for Summary Judgment Based Solely on a Failure to Exhaust Administrative Remedies</u>, (Dkt. #19), <u>Defendants Holmes and Filsinger's Motion for Summary Judgment for Plaintiff's Failure to Exhaust Administrative Remedies</u>, (Dkt. #22), and <u>Defendant Over's Motion for Summary Judgment for Plaintiff's Failure to Exhaust Administrative Remedies</u>, (Dkt. #30). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motions all be **granted in part and denied in part**.


## BACKGROUND

This action was initiated on December 12, 2012, against numerous prison officials. (Dkt. #1). The following allegations are contained in Plaintiff's complaint. On March 3, 2012, Plaintiff was walking on a wet bathroom floor when he slipped and fell injuring his head, back, and ankle. The wet floor was the result of "defective plumbing and structural problems." Plaintiff was taken to a nearby

hospital for medical treatment. After returning to the prison, however, Plaintiff was denied adequate medical treatment for his injuries.

Plaintiff asserts several claims in this action. Plaintiff alleges that certain Defendants violated his Eighth Amendment rights through their deliberate indifference to the hazardous conditions caused by water leaking into the prison. These claims have since been dismissed. (Dkt. #6-7). Plaintiff also alleges that, following his discharge from the hospital, Defendants Holmes, Filsinger, Over, and McKenna failed to treat the various injuries he suffered after falling on the wet floor. Plaintiff further alleges that these particular Defendants denied him medical treatment in retaliation for previously filing grievances against them. These claims survived initial screening and were allowed to proceed. Defendants Holmes, Filsinger, Over, and McKenna now move to dismiss Plaintiff's claims for failure to properly exhaust his available administrative remedies. For the reasons stated below, the undersigned recommends that Defendants' motions be **granted in part and denied in part**.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably

find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## **ANALYSIS**

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative

remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

When assessing whether a prisoner has properly exhausted his claims as required by the PLRA, it is appropriate to seek guidance from the substantively similar exhaustion rules applicable to petitions for writ of habeas corpus. *See Woodford,* 548 U.S. at 88. In the habeas context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). To "'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies." *Id.* at 848 (citation omitted). The Supreme Court has stated that in the habeas context, "the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default." *Woodford,* 548 U.S. at 92. To determine whether a habeas petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly

foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir.2004), *cert. denied,* 544 U.S. 928 (2005); *accord Lancaster v. Adams,* 324 F.3d 423, 436-37 (6th Cir.2003).

Under the procedural default component of § 1997e(a), a prisoner's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir.2005), *cert. denied,* 126 S.Ct. 2978 (2006); *Spruill v. Gillis,* 372 F.3d 218, 222 (3rd Cir.2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations"). Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the United States Constitution or the intended purposes of § 1997e(a). *See Spruill,* 372 F.3d at 232.

In support of their motion for summary judgment, Defendants have submitted evidence that during the relevant time period Plaintiff pursued only three grievances through all three steps of the grievance process. (Dkt. #22, Exhibits A, A-2). Plaintiff does not dispute this allegation, but instead argues that one of these three grievances properly exhausts his claims against Defendants Holmes, Filsinger, Over, and McKenna. An examination of the grievances in question is, therefore, necessary.

A. Grievance DRF 12-03-0732-03e

Plaintiff initiated this grievance on March 19, 2012, alleging that various prison officials were aware of and tolerated building code violations which resulted in the wet and slippery conditions that caused him to slip and fall on March 3, 2012. (Dkt. #22, Exhibit A-2). As noted above, Plaintiff's claims concerning alleged water seepage into the prison have already been dismissed. Thus, this grievance does not serve to exhaust any of the claims remaining in this matter.

B. Grievance DRF 12-03-0593-27z

Plaintiff initiated this grievance on March 4, 2012, to complain about water leaking onto the bathroom floor. (Dkt. #22, Exhibit A-2). Again, Plaintiff's claims concerning alleged water seepage into the prison have already been dismissed. Thus, this grievance does not serve to exhaust any of the claims remaining in this matter.

C. Grievance DRF 12-07-1550-12d1

Plaintiff initiated this grievance on July 5, 2012, against Defendants Holmes, Filsinger, Over, and McKenna. (Dkt. #22, Exhibit A-2). Plaintiff's grievance was received by prison officials on July 9, 2012. In this grievance, Plaintiff alleged that Defendants refused to treat the injuries he suffered when he slipped and fell on March 3, 2012. Plaintiff pursued the matter through all three steps of the grievance process. Defendants nevertheless argue that this grievance is insufficient to properly exhaust Plaintiff's claims against them because Plaintiff initiated the present action prior to receiving a response to his Step III grievance.

Plaintiff submitted his Step III grievance appeal on August 27, 2012. Michigan Department of Correction policy does not articulate a particular time frame within which officials must respond to a Step III grievance. Instead, MDOC policy simply indicates that "[t]he total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II." Mich. Dep't. of Corr., Policy Directive 03.02.130 ¶ S (effective July 9, 2007). Defendants have not asserted, and the record fails to reflect, that an extension was granted in this matter. Plaintiff did not receive a response to his Step III grievance until March 14, 2013, one-hundred ninety-nine (199) days after Plaintiff submitted his Step I grievance.

Plaintiff's complaint is dated November 11, 2012, and was received by the Court on December 12, 2012. Plaintiff clearly initiated this action prior to receiving a response to his Step III grievance. Defendants assert that because Plaintiff initiated the present action before receiving the response to his Step III grievance, this matter must be dismissed for failure to properly exhaust administrative remedies.

Defendants are correct that where an inmate files a civil action in the federal courts before completing the available administrative processes, his complaint must be dismissed for failure to properly exhaust administrative remedies. *See, e.g., Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed"); *Larkins v. Wilkinson*, 1998 WL 898870 at *2 (6th Cir., Dec. 17, 1998) (inmate's "attempt to exhaust his available administrative remedies only after filing suit in federal court ignores the clear mandate of § 1997e(a)"); *McKaye v. Burnett*, 104 Fed. Appx. 515, 516 (6th Cir., July 13, 2004) (same).

The present circumstance, however, is easily distinguishable. As previously noted, MDOC policy provides that the grievance process shall be completed within 120 calendar days of the date on which the Step I grievance was filed. MDOC policy further provides that if prison officials fail to timely respond to a grievance, the inmate may proceed to the next step in the grievance process. *See* Mich. Dep't. of Corr., Policy Directive 03.02.130 ¶ T.

By November 11, 2012, the date on which Plaintiff signed his complaint, and presumably submitted such to prison officials for mailing, 129 calendar days had passed since Plaintiff filed his Step I grievance and 125 days had passed since MDOC officials received Plaintiff's Step I grievance. Pursuant to MDOC policy, therefore, as of November 11, 2012, Plaintiff had pursued all available administrative remedies and had waited longer than the relevant policy requires to receive a response. Pursuant to MDOC policy, if staff fails to timely respond to a grievance, the prisoner may proceed to the next step in the process. That is exactly what Plaintiff did in this instance.

It would be a much different matter had Plaintiff initiated the present action before filing a Step III grievance or before the expiration of the 120 day period articulated by MDOC policy, as in such a circumstance Plaintiff could fairly be said to have filed his action prior to completing the administrative grievance process. In the present circumstance, however, Plaintiff completed the administrative process as defined by the MDOC. The MDOC's failure to comply with its own guidelines on the subject cannot now be employed as the basis for the dismissal of Plaintiff's action.

Under Defendants' logic, MDOC officials could through subterfuge easily obtain the dismissal of *every* lawsuit filed by a prisoner who properly complies with the MDOC's grievance policies. MDOC officials would need only to ignore every Step III grievance until after the expiration of the 120 day period and simply wait until the prisoner files a lawsuit. Once the prisoner files a lawsuit,

MDOC officials could then issue a response to the Step III grievance and claim that the lawsuit must be dismissed because it was filed before the inmate completed the administrative process. Defendants have identified no authority which has interpreted the PLRA in such an extreme manner and the undersigned declines to adopt such an illogical interpretation of the PLRA.

The Court notes, however, that while this grievance serves to exhaust Plaintiff's Eighth Amendment denial of medical treatment claims, this particular grievance makes no mention of Plaintiff's allegations of retaliation. The Court concludes, therefore, that Defendants have carried their burden to demonstrate that Plaintiff has failed to exhaust his First Amendment retaliation claims, but have failed to carry their burden with respect to Plaintiff's Eighth Amendment denial of medical treatment claims. Accordingly, the undersigned recommends that Plaintiff's First Amendment retaliation claims against Defendants Holmes, Filsinger, Over, and McKenna be dismissed for failure to exhaust administrative remedies, but that Plaintiff's Eighth Amendment denial of medical treatment claims against Defendants Holmes, Filsinger, Over, and McKenna go forward.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendant McKenna's Motion for Summary Judgment Based Solely on a Failure to Exhaust Administrative Remedies, (Dkt. #19), be **granted in part and denied in part**; Defendants Holmes and Filsinger's Motion for Summary Judgment for Plaintiff's Failure to Exhaust Administrative Remedies, (Dkt. #22), be **granted in part and denied in part**; and Defendant Over's Motion for Summary Judgment for Plaintiff's Failure to Exhaust Administrative Remedies, (Dkt. #30), be **granted in part and denied in part**. Specifically, the undersigned recommends that Plaintiff's First Amendment retaliation claims

against Defendants Holmes, Filsinger, Over, and McKenna be dismissed for failure to exhaust administrative remedies, but that Plaintiff's Eighth Amendment denial of medical treatment claims against Defendants Holmes, Filsinger, Over, and McKenna go forward.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: August 1, 2013

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge